## Mobile & O. R. Co. *v.* Brewer.*

### (Division B. Feb. 22, 1926.)

### [107 So. 199. No. 25438.]

Master and Servant. *Instruction that putting on new chain five months after accident was circumstance in determining question of negligence held error.*

In the trial of a suit for damages for personal injury, caused by the breaking of a chain, where the testimony showed the chain was replaced by a new one five months after the accident, it was error to instruct the jury for the plaintiff that the taking off of the old chain, which was used at the time of the injury to plaintiff, and the putting on of a new one, is not conclusive proof of the negligence of the railroad company, but is a circumstance to be considered by the jury along with all the other evidence in the case, in determining as to whether or not the defendant, at the time of the accident, was guilty of negligence.

*Corpus Juris-Cyc. References: Master & Servant, 39 C. J., pp. 1136, n. 56; 1238, n. 96; Subsequent changes or repairs not proof of negligence, see 18 R. C. L., p. 626; 3 R. C. L. Supp., p. 833.

Appeal from circuit court of Chickasaw county, second district.

Hon. Thos. E. Pegram, Judge.

Action by Dixie Brewer against the Mobile & Ohio Railroad Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

*Stovall & Stovall* and *Carl Fox,* for appellant.

The court erred in refusing defendant's request for a peremptory instruction. It cannot be said that the fact that there was a lap link in this chain was negligence on the part of the defendant, or that the jury could be permitted to find such negligence from the mere fact that a lap link was used.

Plaintiff did not undertake to establish any evidence or testimony of any character whatsoever, beyond the bare fact that the chain broke or that defendant had been guilty of any negligence whatever in the selection of the chain originally, or in the use of the lap link, or in the maintenance of the chain and lap link.

At the most, plaintiff's bare testimony that the chain broke when he pulled it establishes that it was defective at that moment. It does not follow that it was defective the preceding morning at seven o'clock when it was inspected by defendant's employee, Hayward White, nor that it was defective one hour or five minutes before the accident; and the rule, in the federal courts, and in this court, is that the burden is on the plaintiff to establish that the defect, if there was one, had existed a sufficient length of time for it to have been discovered by defendant in the exercise of reasonable care. *Boston C. C. & N. Y. Canal Co.* v. *Seaboard Transp. Co.* (C. C. A.), 270 Fed. 525, 531; *Hope* v. *R. R. Co.,* 98 Miss. 822, 829-30; 54 So. 369.

Without referring to *res ipsa loquitur* by name, the court below applied it in the case at bar. There was no evidence of any kind whatsoever of negligence on the part of defendant. It was left to the jury to infer negligence from the mere fact that the lap link pulled loose when plaintiff pulled on the chain. It will be noted that the doctrine of *res ipsa loquitur* was referred to in the opinion by Chief Justice Smith in the *Hope case, supra;* but it was held that the doctrine did not apply.

One of the best statements of the rule applicable to this case, cited and approved many times by the United States supreme court and other federal courts, is that in *Patton* v. *Texas Pac. Ry. Co.,* 179 U. S. 658, 663, 45 L. Ed. 361.

The error of instruction No. 6 is so obvious and so harmful that it needs no comment.

*C. A. Bratton, W. F. Buchanan* and *L. P. Haley,* for appellee.

Liability of a railroad company for injuries caused by defective machinery or appliances exists independently of section 193, Constitution of 1890, enlarging the rights of employees, and rests on *its common-law duty to furnish employees safe machinery and appliances.* Failure in this regard is the negligence of the company, not its employees. *White* v. *R. R. Co.,* 72 Miss. 12; *Oil Co.* v. *Ellis,* 72 Miss. 191. The employer is bound to see that his instrumentalities are maintained in a safe condition. He must exercise reasonable and proper watchfulness as to their condition, and guard against dangers liable to arise from ordinary wear and use, from which they may become weakened or unfit for the purpose for which they originally were supplied. He is chargeable with any defect that a proper inspection would have disclosed. The negligence of the delegate or agent will be deemed a negligence of the employer. 18 R. C. L., pp. 560 and 561, secs. 71, 72, 73, and cases cited. See also 169 Iowa, 455, 151 N. W. 506; 202 Mass. 228, 88 N. E. 771. This case is governed by *Ernest E. Parker* v̇. *W. C. Wood Lumber Co.,* 98 Miss. 750.

The appellant objects to the sixth instruction given the appellee, which was with reference to when a new chain was put on, which the proof shows was about five months after this accident. This instruction could not have influenced the jury because it is more than covered by several of the appellant's instructions. The testimony about the chain was given by the appellant's own witness, and it was obvious that the impression they wished to leave on the jury was that they were so anxious to keep the chain in good repair that they put on a new chain. See 14 R. C. L., p. 817, sec. 76.

Argued orally by *Carl Fox* and *Robt. Stovall,* for appellant, and *L. P. Haley,* for appellee.

ETHRIDGE, J., delivered the opinion of the court.

The appellee sued the appellant for a personal in-jury suffered by him by reason of the pulling apart of a "lap link," used in connecting a chain attached to the appliance used by the railroad company in filling the sand box of its locomotive.

The appellee, plaintiff below, was a helper of a hostler at Okolona, Miss., and on the occasion of the injury was filling the sand boxes of the locomotive. The method by which this was done was that the sand was in a tank or box elevated above the locomotive, and there was a chain attached to the valve or piece of machinery. When this chain was pulled, the valve would be so turned that the sand would run into the sand box of the locomotive. When the chain was pulled by the plaintiff in this in-stance, it came apart, causing him to lose his balance on the locomotive and to fall, whereby he was injured.

The plaintiff testified that it would take from ten to fifty pounds' pull to release the valve; that he pulled the chain on the occasion in question in the usual manner; that the chain broke, and he fell and was injured; that he suffered a cut above one eye, a broken finger, and other injuries to his hand, and also that his hip was in-jured permanently, causing serious injury to the sciatic nerve, causing great suffering.

The plaintiff did not see the condition of the chain at the time the injury occurred, which was between twelve and one o'clock at night. The place where plaintiff worked was not lighted at the time. The proof showed that the chain which turned the valve had been pulled apart and broken on a former occasion, that at first it was mended with a piece of wire, but subsequently and be-fore the injury was mended with a "lap link," and that this lap link pulled apart.

The exact condition of the lap link at the time of the injury or immediately after the injury was not shown. The person whose business it was to inspect the appliance

used in loading the sand testified that he inspected it on the morning prior to the injury; that he looked at it, and it appeared to be all right. It further appears from the evidence that this lap link was situated near the valve in the sand tank, which was in some kind of opening, the exact character of which is not very clear from the record, but which it appears would require a somewhat particular examination.

It is very earnestly insisted by the appellant that the proof is not sufficient to sustain the verdict of the jury, and that a directed verdict should have been given by the court as requested by the defendant.

While the proof as to the condition of the sand appliance, lap link, and chain is not as clearly developed as it should be, and while there is no evidence as to how many times these appliances had been used during the day, nor the character of pull required on the chain for the sanding of the boxes of other locomotives during the day, or during the time between the inspection and the accident, still we think it was for the jury to say, from all the circumstances, whether or not the chain was in a safe condition at the time of the inspection and at the time of the injury to appellee, and whether the master was chargeable with negligence under the circumstances. The jury have knowledge of the use of a lap link and the safety of such a link and the amount of power required to separate it when it is properly connected. The proof is not as satisfactory as we should like to see it on this proposition, but, as the case must be reversed for another error, the facts may be more fully developed on another trial.

We think it was error for the court to give the following instruction for the plaintiff:

"The court charges the jury for the plaintiff that the taking off of the old chain, which was being used at the time of the injury to the plaintiff, and putting on a new one, is not conclusive proof of the negligence of the railroad company, but is a circumstance to be considered by

the jury, along with all the other evidence in the case, in determining as to whether or not the defendant at the time of the accident was guilty of negligence."

The proof in the case shows that this chain, which produced the injury by breaking, was replaced by another some five months after the injury. This is entirely too remote to give rise to a presumption of negligence, or to authorize the jury to draw conclusions as embodied in the instruction quoted above from such fact alone. For this error the judgment of the court will be reversed, and the case remanded for a new trial.

*Reversed and remanded.*